IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAIL MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-2241-K |
| | § | |
| DELTA AIRLINES, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed November 21, 2011. The court has considered the motion, response, reply, the summary judgment record, and the applicable law. For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's claims are hereby **dismissed with prejudice.**

### I.    Factual and Procedural Background

The majority of the facts set forth herein are undisputed; however, where they are disputed, Plaintiff's version of the facts is presented. Plaintiff Gail Moore ("Moore") began working for Defendant Delta Airlines, Inc. ("Delta") on January 17, 2000. Moore was hired as a call center representative in reservation sales. At the time of her hire, she was 42 years old.

1

After completing her training with Delta, Moore had no disciplinary history until December 2001. On December 20th, she received a warning letter following a customer complaint that she was rude and unhelpful. Moore was warned that rudeness would not be tolerated, and was advised to work on softening her voice tone when speaking to customers. Moore disagreed with and refused to sign the letter.

Moore was disciplined again in July 2002, when she received a probation letter from her then-supervisor Judy Goodman ("Goodman"). Goodman's July 11, 2002 letter stated that additional customers had complained about Moore since December 2001. The letter further stated that Moore had failed to provide good customer service during a monitored call observation on July 8, 2002. Goodman informed Moore that her probation would last a minimum of six months. Moore disagreed with Delta's decision and did not sign her probation letter. She also took a leave from Delta during 2002 due to job related stress, although it is unclear for how long.

Delta removed Moore from probation in August 2003, after she demonstrated improvement in her customer service skills. However, after being counseled on her customer service more than once between August 2003 and March 2005, and failing to meet certain productivity standards, she was again placed on a six-month probation on March 21, 2005. That probation letter also stated that Moore had been absent from work too much in the previous four months. Moore disagreed with Delta's decision to return her to probationary status.

Between 2005 and 2008, various Delta managers regularly counseled Moore regarding her inability to consistently meet or exceed Delta's call metrics and customer service standards.  In particular, Moore struggled to meet Delta's Average Call Handling Time ("AHT") benchmark, which measures the average time it takes for a Sales Representative to service calls from start to finish.

Moore took a leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* beginning January 30, 2008.  It is unclear how long this leave lasted.  Then on March 29, 2008, Moore injured her back and neck in a car accident.  She was released back to work following the accident in mid-May 2008, and she returned to work.

On May 19, 2008 Moore's current supervisor Jerry Peterson ("Peterson") placed her on probation again.  This probation letter stated that she would be on probation for a minimum of six months due to poor attendance and failure to demonstrate lasting improvement in her AHT, although she had been given numerous side-by-side training sessions to help her improve.  The letter further stated that Moore was on a "final warning" status, and that to keep her job, immediate and lasting improvement would be required in both her attendance and AHT.  Moore did not sign the May 19, 2008 letter but noted on the page that she disagreed.  Moore believes she was put on this final warning only because Goodman did not like her, and alleges that Peterson told her Goodman forced him to do so.

Almost immediately, Moore began another leave of absence, beginning on May 20, 2008.  During her leave, Moore wrote to Rhoda Abadie ("Abadie"), Delta's General Manager of Human Resources.  Moore told Abadie her side of the story, and expressed her concerns that her supervisors (and in particular, Goodman) were penalizing her for taking FMLA leave. She remained on this leave until she returned to work on January 5, 2009.

Upon her return, Moore was placed back into the Global Ticketing Support ("GTS") workgroup she had previously worked  in.  Diane Ramos ("Ramos") (age 47) became Moore's direct supervisor.  Moore believed Ramos would try to find a way to fire her.  Ramos told Moore she wanted her to work on reducing her AHT.  Ramos did not expect immediate, dramatic improvement; however, she did want to see Moore's AHT steadily decrease over time.

After Moore improved her AHT and attendance  reliability, Ramos removed Moore from probation on June 30, 2009.  Later that day, a co-worker told Moore she was surprised that Ramos had posted Moore's AHT in red on the bulletin board, where the entire call center staff could view it.  This employee also expressed her opinion that Ramos did this to harass Moore, and asked Moore when she was going to retire.  Moore replied that she intended to retire on January 17, 2010.

In September 2009, Moore's Lead Agent Rhonda Stallings ("Stallings") spoke to her three times regarding AHT.  On September 21, Stallings had a counseling session

with Moore and told her she needed to keep bringing her AHT down.  Moore did not
know whether her AHT was meeting Delta's expectations or how it compared to the
AHT of her peers, but she believed that Stallings' remarks about her AHT were
harassing.  Moore made several attempts to complain about this to Delta's Human
Resources department at the end of September and in early October, including an email
to Shasta Trumbo ("Trumbo") on September 30, 2009.  She also filed a complaint with
Delta's employee hotline stating that she was being harassed because her AHT numbers
were posted on the bulletin board and supervisors were constantly "bothering" her about
AHT while she was either on the phone with customers or off the clock.  Moore does not
know whether other employees' AHT metrics were also posted, in what color, and
whether she was the only call center representative whose scores were shown in red.

Moore and Trumbo spoke on October 1, and Moore asked Trumbo to tell her
how Delta calculates the AHT benchmark, requested written documentation promising
her that Delta would not terminate her for AHT, and raised concerns about her
placement on Final Warning.  Trumbo emailed Moore on October 9 to acknowledge
Moore's hotline complaint, reassure her that she was following up on her concerns, and
ask if there was anything else that needed to be addressed.

Trumbo investigated and determined that Ramos properly held Moore
accountable for not meeting performance benchmarks.  She also noted at all employees
had their performance metrics posted, not just Moore.  Trumbo found that Moore's

allegations of harassment could not be substantiated, and that Moore had never attributed Ramos' or Stallings' conduct to her age or disability.

On December 4, 2009, Delta conducted its monthly audit of randomly captured monitored calls.  On one call, Moore was heard disconnecting a customer.  The customer's voice was heard at the beginning of the call, but Moore was not heard responding, and the call was disconnected approximately 40 seconds later.  Moore's Agent Call Detail Report for that day showed that the call was disconnected by pressing the "release" button on Moore's phone.  The Agent Call Detail Report also reflected a second disconnected call that lasted 11 seconds.  Based on these reports, Ramos concluded that Moore was deliberately trying to avoid a call that she was trained to handle.  Ramos testified that this type of conduct is unacceptable customer service, and is grounds for immediate discipline, including termination.  On that same day, Stallings apparently told Moore she was doing well.  However, Moore has no evidence that Stallings was aware of the disconnected call found on the report at the time she paid Moore this compliment.

On December 11, 2009, Ramos met with Moore and they listened to the recorded call together.  Moore acknowledged that her voice is not heard on the recording.  They also discussed the Agent Call Detail Report that showed the second disconnected call.  Moore denied that she had intentionally disconnected customer calls and stated that her headset was not working properly, which may have caused her to inadvertently

6

disconnect the calls.  Moore explained that when a call came in but the customer never came on the line, she would unplug and re-plug in her headset.  Ramos responded that even if this were true, the call would not have disconnected, causing a "Yes" to appear in the Agent Release column on the Agent Call Detail Report.  Moore also asked Ramos why Stallings had not mentioned this to her on the afternoon of December 4.  However, the record does not show whether Stallings was aware of the disconnected calls shown on the report at the time of her December 4 discussion with Moore.

Due to the reports,  Delta suspended Moore's employment pending a review of her file to determine whether termination was appropriate.  Ramos testified that she did so because it was Delta's practice to terminate the employment of Sales Representatives who disconnected calls, as it appeared Moore had done.  Ramos told Moore she was being placed on suspension as of December 11, 2009.  Ramos informed Moore that Delta would contact her about the outcome of its review and its ultimate decision on her employment.  Although she was told she was suspended, Moore apparently believed she had been terminated, and applied for unemployment benefits.  A short time later, Moore emailed Trumbo stating her belief  that Ramos had harassed and retaliated against her because she was only a few weeks from retirement.   Trumbo did not respond to this email.

During Moore's suspension, Abadie, Trumbo, and Dallas Call Center Director Jae Higa-Cain ("Higa-Cain") considered whether to terminate Moore's employment based

upon the evidence of the disconnected calls, her disciplinary and performance history, and Delta's treatment of other employees in similar situations. Abadie, Trumbo, and Higa-Cain debated the decision for some time, and ultimately decided in early March 2010 that they would bring Moore back to work instead of terminating her.  Trumbo spoke to Moore on March 8, 2010 to let her know the company's decision.  Moore emailed Trumbo the next day to say she would be out of town for a few days due to the death of her brother.

Trumbo heard nothing further from Moore, and left phone messages for her several times over the next few weeks.  She finally emailed Moore on March 23 and asked Moore to contact her by phone.  Moore did not call Trumbo, who then sent her a letter on March 26, 2010, asking Moore to respond either by phone or email to discuss the details of her return to work.  Moore's attorney then wrote to Trumbo on April 1, 2010, arguing that Delta had terminated Moore.  Delta's attorney Sheandra Clark ("Clark")  responded in early May, clarified that Moore had not been terminated, and again asked Moore to contact Trumbo by May 21 to work out the details of her return. Clark's  letter further stated that if Delta did not hear from Moore by that date, it would conclude  that she  had  voluntarily resigned. This letter  drew another  contentious response from Moore's counsel John Wall ("Wall") dated May 21, 2010, which stated Moore had no interest in returning to work at Delta.

8

Although Wall's May 21 missive seemed to settle the question, Delta tried one more time to reach a more beneficial solution for Moore. Clark wrote to Wall on June 3, 2010. While acknowledging Moore's decision to resign, Clark reminded her that she was eligible to retire instead, but that she had not requested enrollment in Delta's retirement program. Rather than process Moore's resignation immediately, Delta stated that if she requested participation in Delta's retirement program by June 11, 2010, she would be eligible to receive retirement benefits, including retiree medical coverage and travel benefits. Wall then responded on June 11, stating that Moore had elected to retire. Moore retired from Delta effective June 1, 2010, at approximately 52 years old.

Moore filed suit against Delta in state court on October 18, 2010, continuing to allege that she was terminated, and claiming under state law that Delta unlawfully discriminated and retaliated against her due to disability and age. Delta subsequently removed the case to this court. Delta now moves for summary judgment on all of Moore's claims.

## II.      Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the

absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III.    Defendant's Motion for Summary Judgment

Delta contends that summary judgment is appropriate because Moore cannot raise a genuine issue of material fact regarding any of her claims. The court agrees, and addresses each claim as follows:

### A.    Disability-Based Claims

In her pleading, Moore has asserted claims for disability discrimination, retaliation, and failure to accommodate under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.051, 21.055. Delta has moved for summary judgment on all of Moore's disability-related claims. Moore did not address these claims in her summary judgment response. Accordingly, the court determines that Moore has abandoned these claims. *Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir.

10

2006, *citing Vela v. City of Houston,* 276 F.3d 659, 679 (5th Cir. 2001); *Yohey v. Collins,* 985 F.2d 222, 224-25 (5th Cir. 1993).  Moore's claims for disability discrimination, retaliation, and failure to accommodate must be dismissed.

### B.    Age Discrimination

Moore claims that Delta violated the TCHRA, Tex. Lab. Code § 21.051, *et seq.* by discriminating against her and discharging her based on her age.  Delta moves for summary judgment on these claims.

### 1.    Applicable Law

An employer commits an unlawful employment practice under the statute if because of race, color, disability, religion, sex, national origin, or age the employer:

(1)    fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2)    limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab. Code § 21.051.  The TCHRA also provides:

(a)    Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice,

11

> unless race, color, sex, national origin, religion, age, or disability is combined with objective job-related factors to attain diversity in the employer's work force.
>
> (b)    In a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint under Subsection (a), but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay.

*Id.* § 21.125.

Because the TCHRA's stated purpose is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," Texas courts apply analogous federal case law when interpreting the Texas statute. *Id.* § 21.001(1); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001). However, because this is an age discrimination case, it should be noted that Texas courts have declined to apply the "but for" causation standard set forth in *Gross v. FBL Fin. Svcs.,* 557 U.S. 167; 129 S.Ct. 2343 (2009) to age discrimination claims brought under the TCHRA. *See, e.g., Hernandez v. Grey Wolf Drilling, L.P.,* 350 S.W.3d 281, 285 (Tex. App. – San Antonio 2011, no pet.). This difference in interpretation of the federal and state statutes is premised upon their varying texts. The federal Age Discrimination in Employment Act ("ADEA") specifically prohibits discrimination "because of" a person's

12

age, and thus the Supreme Court in *Gross* decided that an ADEA claimant must show that age was a "but for" cause of the challenged employment decision, and cannot prevail by showing that age was merely a motivating factor.  29 U.S.C. § 623(a)(1); 129 S.Ct. at 2349.   Meanwhile, the TCHRA's statutory language explicitly provides that an employment decision can be unlawful when age is a "motivating factor" in the decision. Tex. Lab. Code § 21.125(a).  At least one other court in this district has decided that *Gross* does not apply to TCHRA claims for this reason.  *See Houchen v. Dallas Morning News, Inc.,* 2010 WL 1267221, *11-12 (N.D. Tex. 2010) (*Gross* inapplicable due to differing legal standards in ADEA and TCHRA).  However, Delta states that this court need not rule on the issue, because it is entitled to summary judgment under either standard.

The parties agree that because Moore has no direct evidence of age discrimination, her claims should be evaluated under the well-known *McDonnell Douglas* burden-shifting analysis, which Texas courts invoke in employment discrimination cases brought under the TCHRA.  *See Quantum,* 47 S.W.3d at 476; *Waldmiller v. Continental Express, Inc.,* 74 S.W.3d 116, 122-23 (Tex. App. – Texarkana 2002, no pet.)*, citing McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S Ct. 1817 (1973).   Under this burden-shifting scheme, the plaintiff is first charged with setting forth a *prima facie* case of discrimination.  *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)*, cited in Russo v. Smith Intl., Inc.,* 93 S.W.3d 428, 434 (Tex. App. – Houston [14th Dist.] 2002, pet. denied).  If the

13

plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. *Id.* Should the defendant carry this burden, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* Delta contends that summary judgment is warranted because Moore cannot establish both a *prima facie* case of discrimination, and that Delta's reasons for its actions were pretextual.

## 2.      Analysis

To establish her *prima facie* case of age discrimination, Moore must show that she 1) was within the protected class of individuals aged forty or older, 2) was discharged, 3) was qualified for the position from which she was discharged, and 4) was either replaced by someone outside the protected class, treated less favorably than someone younger or an employee outside of her protected class, or was otherwise discharged because of her age. *Smith v. City of Jackson,* 351 F.3d 183, 196 (5th Cir. 2003), *aff'd,* 544 U.S. 228 (2005); *Adams v. Valley Federal Credit Union,* 848 S.W.2d 182, 186-87 (Tex. App. – Corpus Christi 1992, writ denied), *citing Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1505 (5th Cir. 1988).

Delta argues that Moore is unable to establish a *prima facie* case of discrimination because she cannot show that she was replaced by, or treated worse than, employees outside of the protected class.  Specifically, Delta sets forth proof that when Moore was

suspended, she was not replaced by any particular employee and that her duties were instead absorbed by other employees at the call center.  Moore has not offered any admissible summary judgment proof to contest this evidence.  Her conclusory assertions that other employees were not terminated after one disconnected call, and that Delta had hired many new young employees are not supported by the summary judgment record.  Unsupported allegations or affidavits setting forth ultimate or conclusory facts are insufficient to avoid the entry of summary judgment.  *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Garcia v. LumaCorp., Inc.,* 429 F.3d 549, 555 (5th Cir. 2005)(unsubstantiated assertions in affidavits are not competent summary judgment evidence).  Accordingly, Moore has failed to establish one of the required elements of her *prima facie* case, and Delta must be granted summary judgment on her age discrimination claim.

Even if Moore had successfully laid out a *prima facie* case of age discrimination (which she has not), the court finds that Delta is able to rebut such a *prima facie* case, because it has articulated a legitimate, non-discriminatory reason for its decision to suspend Moore.  Delta has shown that after reviewing random monthly calls, Moore's supervisors believed that she had purposefully disconnected a call from a customer.  Therefore, Delta has carried its burden under the *McDonnell Douglas* burden-shifting scheme, and the burden now shifts back to Moore to set forth proof raising a genuine issue of material fact whether Delta's proffered explanation for its actions are pretextual.

15

As with her *prima facie* case, Moore's age discrimination claim also fails at the pretext stage, because has not presented evidence that suggests Delta's reasons are untrue, with the real reason being age discrimination.  First, Moore argues that she can show pretext because she sporadically met expectations on individual calls observed by supervisors between January and November 2009.  Second, she states that Delta failed to document alleged performance problems, which shows Delta's proffered reason for its decisions is pretextual.  Finally, she contends that Delta offered "shifting" explanations for her suspension or discharge that would suggest pretext.  Specifically, Moore cites to evidence that Delta's worker's compensation vendor reported to the Texas Workforce Commission in late December 2009 that Moore had been terminated for misconduct, while later on, after struggling internally with what to do, Delta decided  against terminating Moore and moved to reinstate her.

Delta vigorously disputes Moore's contention that it did not document her performance issues, and the court agrees that the record is rife with evidence of the numerous occasions on which Moore was counseled, warned, and/or provided additional training and support in order to be able to perform up to Delta's expectations for her concerning AHT and other requirements.  Therefore, this conclusory assertion is completely unsupported by the record and does not shore up her pretext argument.  *See Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996) (conclusory allegations are insufficient to defeat a motion for summary judgment).

16

Otherwise, Delta largely does not dispute Moore's evidence that she did at times receive positive ratings on individual calls, and that it wrestled with the decision whether to terminate her after the disconnected call in December 2009. Nevertheless, this proof does not raise a fact issue regarding what Delta really believed when it concluded that Moore intentionally disconnected a customer call in December 2009. As to that issue, Moore only submits evidence denying that she disconnected the call. In considering the results of an investigation into employee misconduct, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995). Merely disputing or denying the underlying facts of an investigation, as Moore has done, fails to create a fact issue as to the falsity of the defendant's explanation. *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 379 (5th Cir. 2010); *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 391 (5th Cir.2007). The court looks to whether Delta's perception of Moore's performance, whether accurate or not, was the real reason for her suspension (or, as she views it, her termination). *Laxton v. Gap, Inc.,* 333 F.3d 572, 580 (5th Cir. 2003).

Furthermore, with respect to the alleged "shift" in Delta's reasons for its actions, the court finds there was no such shift in the proffered reason – that Moore appeared to have improperly disconnected a call. Rather, the shift was in the consequence ultimately applied. While it is clear that Delta initially planned to terminate Moore, it

17

downgraded that penalty by giving her the benefit of the doubt and the opportunity to return to work.  This evidence does not amount to "shifting explanations" for its actions, rather just shifting employment actions which, it should be noted, shifted *in Moore's favor.*

The overall  record suggests, at best, that while Moore's supervisors felt the call report showed she had intentionally hung up on a customer, Delta had a hard time making a final decision, and in the end gave her the benefit of the doubt rather than complete her termination.  Moore has presented no proof to suggest that Delta did not believe she disconnected the call at issue, and that this explanation is actually a pretext for age discrimination.  Even if Moore's explanation of the situation is the true one, and Delta mistakenly believed otherwise, the law does not protect her from erroneous personnel decisions.  *Bienkowski,* 851 F.2d at 1508.  Moore's subjective belief  that Delta's actions flowed from an intent to discriminate against her based on her age will not rescue her claim.  *See Bauer v. Albemarle Corp.,* 169 F.3d 962, 967 (5th Cir. 1999) (employee's subjective belief of discrimination alone cannot be the basis for judicial relief);  *Elliott v. Grp. Med. & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir. 1983), *cert. denied,* 467 U.S. 1215 (1984) (same).  Therefore, because she has not raised a genuine issue of material fact as to either her *prima facie* case or pretext, she cannot survive summary judgment on her age discrimination claim.

18

### C.      Retaliation

Finally, Moore contends that Delta retaliated against her for making internal complaints of harassment and discrimination through Delta's employee hotline and its human resources department.  As with Moore's claims of age discrimination, Delta moves for summary judgment on her retaliation claim.

### 1.      Applicable Law

Under Texas law, it is unlawful for an employer to retaliate or discriminate against a person who opposes a discriminatory practice, makes or files a charge, files a complaint, or testifies, assists or participates in any manner in an investigation or hearing.  Tex. Lab. Code § 21.055.  The parties agree that retaliation claims are also analyzed within the *McDonnell Douglas* burden-shifting structure.

For a *prima facie* case of retaliation under § 21.055, the plaintiff must show that 1) he engaged in a protected activity, 2) an adverse employment action occurred, and 3) there was a causal connection between participation in the protected activity and the adverse employment decisions. *Thomas v. Clayton Williams Energy, Inc.,* 2 S.W.3d 734, 739 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The burden then shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* Once the employer has done so, the burden of proof returns to the plaintiff to demonstrate that the employer's proffered reason was a pretext for retaliation, and that engaging in the

19

protected activity was the but-for cause of the adverse employment action. *Pineda v. UPS,* 360 F.3d 483, 485 (5th Cir.2004); *Quantum,* 47 S.W.3d at 479.

### 2.  Analysis

Delta seeks summary dismissal of Moore's retaliation claim, arguing that she cannot establish a *prima facie* case, or show that Delta's reasons for its decisions are pretextual.

Delta first argues that Moore cannot establish a *prima facie* case of retaliation because she did not engage in protected activity.  In response, Moore contends that her complaints of "harassment" made to Trumbo and through the Delta employee hotline in late September and early October 2009 were protected activity.  While Moore is correct that  internal complaints of discrimination can qualify as protected activity, the basis of her complaints was that her AHT statistics were posted in red on a bulletin board in the call center, and that her supervisors were counseling her about her AHT. As is noted above, Moore has no evidence whether the AHT statistics for her co-workers were also posted, and if so, in what color.  Although Moore clearly was uncomfortable with her performance shortcomings being brought to her attention in this way, she did not complain that Delta did so due to her age, nor does she have any evidence that younger peers who did not meet AHT did not have their results posted or were not counseled about it.

Complaints of harassment that do not reference a protected characteristic cannot be classified as "protected conduct" for purposes of establishing a *prima facie* case of retaliation. *See, e.g., Harris-Childs v. Medco Health Solutions, Inc.,* 169 Fed. Appx. 913, 916 (5th Cir. 2006) (employee did not engage in protected activity because in her complaints to management, she never mentioned she felt she was being treated unfairly due to race or sex); *Wiltz v. Christus Hosp. St. Mary,* 2011 WL 1576932, *11 (E.D. Tex. 2011) (employee's internal complaint of harassment that was not based on race did not qualify as protected activity). "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Carter v. Luminant Power Services Co.,* 2011 WL 6090700, *14 (N.D. Tex. 2011), *citing Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 349 (5th Cir. 2007), and *Brown v. UPS,* 406 Fed. Appx. 837, 840 (5th Cir. 2010). Although the record shows that Moore used the term "harassment" in her internal complaints, there is no proof that she complained the harassment was based on age, thus putting Delta on notice that she was alleging unlawful discrimination. The court agrees that Moore cannot raise a fact issue whether she engaged in protected activity.

Delta further argues that Moore's *prima facie* case of retaliation fails because she cannot demonstrate a causal connection between her protected conduct and Delta's decision to suspend her. In response, Moore states that because she was suspended a little more than two months after her initial complaints, this temporal proximity

21

establishes an inference of causation.  The causal link required to meet the third prong of the *prima facie* case is not as stringent as the "but for" standard.  *Evans v. City of Houston,* 246 F.3d 344, 352 (5th Cir. 2001).   Close timing between an employee's protected activity and an adverse action against her may provide the causal connection needed to make out a *prima facie* case of retaliation.  *Swanson v. Gen. Svcs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.), *cert. denied,* 522 U.S. 948 (1997).  However, as Delta points out, intervening events such as the discovery of Moore's disconnected calls can weaken the causal link where such events provide a legitimate basis for the employer's action.  *See, e.g., Twigg v. Hawker Beechcraft Corp.,* 659 F.3d 987, 1001 (10th Cir. 2011), *citing Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1203, (10th Cir. 2006).  Viewing the evidence in the light most favorable to Moore, the court finds that she has, just barely, set forth sufficient proof of a causal connection.  However, because she has not raised a fact issue regarding protected activity, her *prima facie* case still fails, and the court must grant summary judgment.

Moving to the next stage of the *McDonnell Douglas* analysis, the court finds that as with Moore's age discrimination claim, Delta has offered sufficient proof of a legitimate, non-retaliatory motive, specifically that it appeared from the December 2009 call audit and call report that Moore had intentionally disconnected at least one (and possibly additional) customer calls.  Therefore, although Moore has not established a

*prima facie* case, the court will, in the interest of completeness, shift the burden back to Moore and address the pretext element of her retaliation claim.

As with her age discrimination claim, Delta contends that Moore has no evidence of pretext, and that therefore summary judgment is appropriate on Moore's retaliation claim. The court agrees. For the reasons stated above with respect to her age discrimination claim, the court finds that she is similarly unable to establish a genuine issue of material fact regarding pretext. This claim must also be dismissed.

### IV.   Plaintiff's Objections to Defendant's Summary Judgment Evidence

Moore has filed vague hearsay objections to portions of the Higa-Cain and Ramos declarations, which were submitted by Delta in support of its summary judgment motion. She does not specify what statements in the declarations are hearsay, or why they are hearsay. "The court is not required to review large quanta of evidence to ferret out inadmissible statements." *Tucker v. SAS Institute, Inc.,* 462 F. Supp.2d 715, 722 (N.D. Tex. 2006). Rather, Federal Rule of Evidence 103(a)(1) requires an objection that details the specific evidence to be stricken and the specific grounds therefor. *Id, citing United States v. Avants,* 367 F.3d 433, 445 (5th Cir. 2004) and *United States v. Polasek,* 162 F.3d 878, 883 (5th Cir. 1998). Evidence on summary judgment may be considered to the extent that it is not based on hearsay or other information that is not admissible at trial. *Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir. 1995); *Powell v. Dallas Morning News L.P.,* 776 F. Supp.2d 240, 246 (N.D. Tex. 2011). In evaluating all of the evidence, the

court has disregarded any speculative, conclusory, or hearsay evidence and has considered only competent summary judgment proof in considering Delta's summary judgment motion.  Accordingly, Moore's objections are **overruled as moot.**

### V.      Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted,** and Plaintiff's claims are hereby **dismissed with prejudice.**  Judgment will be entered by separate document.

**SO ORDERED.**

Signed March 1st, 2012.


_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

24